[Cite as *State v. Piercefield*, 2023-Ohio-1781.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2022-09-046 |
| | : | O P I N I O N |
| - vs - | | 5/30/2023 |
| | : | |
| CHANSE W. PIERCEFIELD, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY MUNICIPAL COURT
Case No. 22CRB1875

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas Horton, Assistant Prosecuting Attorney, for appellee.

Gary A. Rosenhoffer, for appellant.

**HENDRICKSON, J.**

{¶ 1} Appellant, Chanse Piercefield, appeals from his conviction in the Clermont County Municipal Court for one count of domestic violence. For the reasons detailed below, we reverse Piercefield's conviction and remand for a new trial.

{¶ 2} On June 18, 2022, Piercefield was charged by separate complaints with one count of domestic violence in violation of R.C. 2919.25(A), a first-degree misdemeanor, and

one count of child endangering in violation of R.C. 2919.22(A), a first-degree misdemeanor. The charges arose after an incident between Piercefield and K.S., the mother of his then three-year-old son. The complaints alleged that Piercefield caused K.S. to suffer physical harm when he grabbed her by the throat, slammed her down several times, and struck her head and face multiple times. It was further alleged that during part of the physical altercation, K.S. was holding the couple's son.

{¶ 3} Piercefield pled not guilty to the charges and the matter proceeded to a bench trial on July 14, 2022. The state subpoenaed K.S. to appear at trial and give testimony. K.S. appeared with counsel, who informed the court that K.S. did not want to "go forward" and intended to invoke her Fifth Amendment right to remain silent. When called as a witness, K.S. answered a few preliminary questions regarding her name, address, and relationship with Piercefield, but then invoked her Fifth Amendment right not to provide further testimony.

{¶ 4} At that point, the trial court heard argument from both parties regarding K.S.'s ability to exercise her Fifth Amendment right not to testify. Counsel for K.S. argued that some of K.S.'s testimony regarding the events of June 18, 2022, could lead to criminal liability. In opposition, the state claimed that K.S. could not assert her Fifth Amendment right not to testify because her charges of disorderly conduct and falsification, which stemmed from the incident on June 18, 2022, had been dismissed with prejudice, thereby eliminating her exposure to criminal liability. Ultimately, the trial court permitted K.S. to exercise her Fifth Amendment right not to answer any further questions.

{¶ 5} The state then presented testimony from Sergeant Ricky McAdams with the Village of Owensville Police Department. Sergeant McAdams testified that around 11:00 a.m. on June 18, 2022, he was dispatched to the United Dairy Farmers ("UDF") in Owensville, Ohio. Upon arriving, he made contact with K.S. and observed bruises on her

left and right cheeks, dried blood on her face, bruising to her neck area, bruising to her head on and behind her ear, and a gash on the inside of her cheek. The sergeant also observed injuries on K.S.'s son, who was with K.S. at the UDF, including cuts to the inner cheek of his mouth. Photographs of K.S. and her son's injuries were admitted into evidence.

{¶ 6} At the time the sergeant spoke with K.S., she appeared to be under "the stress of the underlying event" and was a "little worked up." Sergeant McAdams also spoke with Piercefield, who indicated "there was a loud argument and no physical altercation occurred."

{¶ 7} Sergeant McAdams also explained that K.S. made a 9-1-1 call, which he was familiar with and had listened to before. After an objection from Piercefield, the trial court did not permit the state to play a recording of the 9-1-1 call during trial and the recording was not otherwise admitted into evidence.

{¶ 8} The sergeant testified Piercefield caused the injuries to the child and K.S. while Piercefield, K.S., and the child were at their residence at 312 East Main Street. The sergeant came to this conclusion based upon his investigation, his conversation with K.S., the photographs he took of the injuries, and "everything he observed." Sergeant McAdams reiterated that through his investigation, he did not find any evidence that led him to believe the child or K.S. caused the child's injuries, or that K.S. or the child caused K.S.'s injuries.

{¶ 9} On cross-examination, Sergeant McAdams testified he did not find any physical evidence as to the source of the child or K.S.'s injuries. He indicated he believed the injuries occurred on June 18, 2022, but acknowledged he did not know a specific date, time, or place that the injuries occurred and did not observe the injuries happen. He further acknowledged that he did not know if a third person was present during the incident or caused the injuries to K.S. and her son.

{¶ 10} Throughout the sergeant's testimony, defense counsel objected several times on the basis of hearsay. Specifically, defense counsel argued that much of the sergeant's

testimony, including his opinion that Piercefield caused the injuries to K.S. and his child, were based upon statements from K.S., which were hearsay. Defense counsel further argued the state was attempting to get K.S.'s testimony in through "the back door," i.e., through her statements to the sergeant, because K.S. had "taken the Fifth" and the state could not otherwise get her statements admitted. The trial court overruled most of defense counsel's objections. At the conclusion of the sergeant's testimony, defense counsel moved to strike "all of his hearsay that was previously given," which was also overruled by the trial court.

{¶ 11} Following Sergeant McAdams' testimony, the state rested and Piercefield moved for a directed verdict of acquittal. The trial court denied the motion. Piercefield then rested without presenting any witnesses and renewed his motion. The trial court denied the renewed motion for acquittal.

{¶ 12} After considering the above evidence, the court found Piercefield guilty of domestic violence and not guilty of child endangerment. The trial court sentenced Piercefield to 90 days in jail, with 80 days suspended and a credit of 5 days. The trial court also imposed a $150 fine, plus court costs, and ordered Piercefield to complete substance abuse treatment and to have no uninvited contact with K.S.

{¶ 13} Piercefield now appeals, raising three assignments of error for our review.

{¶ 14} Assignment of Error No. 1:

{¶ 15} THE TRIAL COURT ERRED BY ALLOWING HEARSAY TESTIMONY TO BE INTRODUCED AS EVIDENCE IN VIOLATION OF THE CONFRONTATION CLAUSE OF THE OHIO AND U.S. CONSTITUTIONS.

{¶ 16} In his first assignment of error, Piercefield argues the trial court erred in admitting inadmissible hearsay evidence at trial. Specifically, he claims that a significant portion of Sergeant McAdams' testimony is inadmissible hearsay, as he testified to out-of-

court statements made by K.S., which was "violative of the confrontation clause(s) and [was] harmful error."

{¶ 17} A trial court's decision to admit or exclude evidence will not be reversed by a reviewing court absent an abuse of discretion. *State v. McLaughlin*, 12th Dist. Clinton No. CA2019-02-002, 2020-Ohio-969, ¶ 42. An abuse of discretion implies more than an error of law or judgment; it suggests that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. *State v. Babyak*, 12th Dist. Madison No. CA2019-08-025, 2020-Ohio-325, ¶ 11.

{¶ 18} Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Evid.R. 801(C). Hearsay is inadmissible unless it falls within one of the enumerated exceptions in the rules or is otherwise excepted. *State v. Villani*, 12th Dist. Butler No. CA2018-04-080, 2019-Ohio-1831, ¶ 22.

{¶ 19} "[T]he Confrontation Clause bars only the admission of 'testimonial' hearsay." *State v. Waver*, 12th Dist. Butler No. CA2015-08-155, 2016-Ohio-5092, ¶ 39, citing *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354 (2004). "If testimony qualifies as nonhearsay, it does not implicate the Confrontation Clause." *State v. Stafford*, 12th Dist. Butler No. CA2016-11-219, 2017-Ohio-7118, ¶ 28, citing *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 186.

{¶ 20} A "statement" is (1) an oral or written assertion or (2) nonverbal conduct intended to be an assertion. Evid.R. 801(A). There is no "statement" for hearsay purposes where a witness does not testify about "what someone else said, wrote, or did." *State v. Maiolo*, 2d Dist. Clark No. 2015-CA-15, 2015-Ohio-4788, ¶ 14, citing Evid.R. 801(A); *see State v. Carruth*, 2d Dist. Montgomery No. 19997, 2004-Ohio-2317, ¶ 57 (finding officer's testimony regarding what he learned during his investigation into a remote control device

found on the defendant not a statement for hearsay purposes); *State v. Neal*, 2d Dist. Champaign Nos. 2000 CA 16 and 2000 CA 18, 2002-Ohio-6786, ¶ 51 (finding no hearsay where sheriff testified regarding what he learned as a result of his investigation and related no statement made to him concerning the testimony); *State v. Bailey*, 8th Dist. Cuyahoga No. 97330, 2012-Ohio-3356, ¶ 29 (finding the detective's testimony implicating what a witness reported provided context to events leading up to an arrest, did not include what the witness told him, and was not hearsay).

{¶ 21} In this case, Piercefield generally alleges that "[Sergeant] McAdams was allowed to testify as to what [K.S.] said," but fails to point to any specific statement from K.S. that the sergeant testified to at trial. Instead, Piercefield claims the sergeant "took some information from [K.S.] and from Piercefield" as a part of his investigation and was permitted to testify regarding the results of that investigation. Thus, because K.S. did not testify at trial, Piercefield argues any testimony based upon statements she made during the investigation was hearsay.

{¶ 22} After our review of the trial transcript, we find the sergeant's testimony did not contain hearsay and did not implicate the Confrontation Clause. Although the trial court permitted Sergeant McAdams to testify regarding the "underlying incident," including where the incident occurred and who caused K.S.'s injuries, at no time did he testify as to what K.S. told him. Instead, the sergeant merely explained that, based upon his investigation, he concluded that Piercefield caused K.S.'s injuries. Although his investigation included speaking with K.S., he never testified to what she said, wrote, or did. Accordingly, because his testimony only conveyed the results of his investigation into the incident, Sergeant McAdams' testimony does not constitute hearsay, and did not implicate any concerns regarding the Confrontation Clause. *See State v. Wingfield*, 8th Dist. Cuyahoga No. 107196, 2019-Ohio-1644, ¶ 31-32, 38; *Stafford* at ¶ 28. Therefore, the trial court did not err

in overruling Piercefield's various hearsay objections.

{¶ 23} The fact that Sergeant McAdams' testimony is not inadmissible hearsay does not mean, however, that it was admissible evidence. Indeed, the state concedes in its appellate brief that the trial court committed reversible error when it permitted Sergeant McAdams to testify to matters outside his personal knowledge. Evid.R. 602 states that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." "'Personal knowledge' is '[k]nowledge gained through firsthand observation or experience, as distinguished from a belief based on what someone else has said.'" *Bonacorsi v. Wheeling & Lake Erie Ry. Co.*, 95 Ohio St.3d 314, 2002-Ohio-2220, ¶ 26, quoting Black's Law Dictionary 875 (7th Ed.Rev.1999). Thus, "'[t]he subject of a witness's testimony must have been perceived through one or more of the senses of the witness,'" and a witness is incompetent to testify to any fact "'unless he or she possesses firsthand knowledge of that fact.'" *State v. Teets*, 4th Dist. Pickaway No. 17CA21, 2018-Ohio-5019, ¶ 28, quoting *Bonacorsi* at ¶ 26, quoting Weissenberger's Ohio Evidence, Section 602.1, 213 (2002).

{¶ 24} In this case, Sergeant McAdams testified that his investigation included being dispatched to UDF, speaking with the victim and Piercefield, taking photographs of the injuries, and listening to K.S.'s 9-1-1 call. Based upon that investigation, the sergeant concluded that Piercefield caused the injuries to K.S. at their home on June 18, 2022. However, when considering the information produced by the sergeant's investigation, it is apparent his conclusion was based upon K.S.'s out-of-court statements. Specifically, Sergeant McAdams did not visit the scene of the incident or witness any of the couples' encounter, and Piercefield claimed the couple engaged in a verbal altercation, not a physical one. As a result, the sergeant's conclusion did not stem from his firsthand observation or experience, but was based upon his out-of-court conversation with K.S. or

her 9-1-1 call, which was not admitted into evidence or played during trial.

{¶ 25} Evid.R. 602 precludes a witness, like Sergeant McAdams, "from testifying to the truth of the subject matter of [a] hearsay statement if [the witness] has no personal knowledge of it." 1980 Staff Note, Evid.R. 602. As such, because the sergeant did not have personal knowledge of the underlying incident, and instead based his testimony on the hearsay statements of K.S., the trial court abused its discretion in permitting him to testify that Piercefield caused the injuries to K.S.

{¶ 26} Accordingly, we find merit to Piercefield's argument and sustain his first assignment of error.

{¶ 27} Assignment of Error No. 2:

{¶ 28} THERE IS INSUFFICIENT ADMISSIBLE EVIDENCE OF GUILT TO SUSTAIN THE FINDING THAT PIERCEFIELD IS GUILTY OF DOMESTIC VIOLENCE.

{¶ 29} Assignment of Error No. 3:

{¶ 30} THE STATE OF OHIO FAILED TO PRODUCE PROOF OF ESSENTIAL ELEMENTS OF THE CHARGE OF DOMESTIC VIOLENCE.

{¶ 31} In his remaining assignments of error, Piercefield argues that, because the trial court improperly admitted part of Sergeant McAdams' testimony, there was insufficient evidence to support Piercefield's conviction for domestic violence. Piercefield's claim is based, in part, on his belief that "[w]here inadmissible evidence is used to sustain guilt, the verdict or decision must be reversed and the accused discharged."

{¶ 32} Given our conclusion above, we will first address whether we are to consider the improperly admitted portions of Sergeant McAdams' testimony in our sufficiency analysis. The Ohio Supreme Court has rejected the position that a reviewing court should consider only properly admitted evidence to determine whether the state has presented sufficient evidence to support a conviction. *State v. Brewer*, 121 Ohio St.3d 202, 2009-

Ohio-593, syllabus, following *Lockhart v. Nelson*, 488 U.S. 33, 109 S.Ct. 285 (1988); *see also State v. Young*, 12th Dist. Butler No. CA2018-03-047, 2019-Ohio-912, ¶ 43. This is because the state "may rely upon the trial court's evidentiary rulings in deciding how to present its case." *Id.* at ¶ 19, citing *Lockhart*. As a result, the reviewing court should consider all of the evidence admitted at trial, whether erroneously or not. *Id.* at ¶ 17-20. This includes testimony that was not based upon the personal knowledge of the witness and was improperly admitted pursuant to Evid.R. 602. *See State v. Denny*, 9th Dist. Wayne No. 08CA0051, 2009-Ohio-3925, ¶ 8-9. Therefore, Ohio law requires this court to consider all evidence admitted at trial, including the improperly admitted portions of Sergeant McAdams' testimony.

{¶ 33} Turning to the sufficiency of the evidence presented at trial, whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 34} As noted above, Piercefield was convicted of domestic violence in violation of R.C. 2919.25(A). Pursuant to that statute, "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." A person acts knowingly when, regardless of purpose, "the person is aware that the person's conduct will probably cause

a certain result or will probably be of a certain nature." R.C. 2901.22(B). The term "physical harm" means "any injury, illness, or other physiological impairment regardless of its gravity or duration." R.C. 2901.01(A)(3). R.C. 2919.25(F)(1)(b) defines a "family or household member" to include "[t]he natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent."

{¶ 35} When considering the entirety of the testimony presented at trial, there is no dispute that the victim, K.S., is the mother of Piercefield's child and therefore a family or household member of Piercefield. There is also no dispute that K.S. suffered injuries including bruising on her cheeks, neck, and head, as well as a gash inside her cheek, and that, based upon his investigation, Sergeant McAdams believed Piercefield caused those injuries to K.S. Piercefield argues, however, that the state failed to prove that he knowingly caused K.S. physical harm.

{¶ 36} It is well settled that, in order to act knowingly, a defendant merely has to be aware that the result may occur; it is not necessary to demonstrate that the defendant intended to cause physical injuries. *State v. Standifer*, 12th Dist. Warren No. CA2011-07-071, 2012-Ohio-3132, ¶ 25. "[I]f a given result is probable, a person will be held to have acted knowingly to achieve it because one is charged by the law with knowledge of the reasonable and probable consequences of his own acts." *State v. Robinson*, 12th Dist. Fayette No. CA2005-11-029, 2007-Ohio-354, ¶ 18. This principle comports with the long-held maxim in Ohio law that a person is presumed to intend the probable consequences of his voluntary acts. *State v. Krieger*, 12th Dist. Warren No. CA2017-12-167, 2018-Ohio-4483, ¶ 15.

{¶ 37} In this case, Piercefield did not testify at trial, which prevented any direct evidence of his mental state at the time of the incident. However, absent a defendant's admission regarding his knowledge, whether a person acts knowingly can be determined

- 10 -

from all the surrounding facts and circumstances, including the doing of the act itself. *Robinson* at ¶ 18. In fact, the Ohio Supreme Court has concluded that if a defendant's mental state is difficult to establish with direct proof, it may be "inferred from the surrounding circumstances." *State v. Logan*, 60 Ohio St.2d 126, 131 (1979).

{¶ 38} "[W]hen the state relies on circumstantial evidence to prove an element of the offense charged, there is no requirement that the evidence must be irreconcilable with any reasonable theory of innocence in order to support a conviction." *Jenks*, 61 Ohio St.3d at 273. Ohio law does not require "an appellate court to re-examine the circumstantial evidence to determine if the defendant's theory of innocence is reasonable or plausible." *Id.* at 264. This means that when the state relies on circumstantial evidence to prove an element of an offense, it does not matter if that evidence suggests a plausible alternative consistent with innocence. *State v. Cotton*, 12th Dist. Butler No. CA2022-05-055, 2023-Ohio-46, ¶ 42. While there may be several conclusions that may be inferred from the circumstantial evidence, it is the factfinder's prerogative which to choose. *Id.* When a court reviews the evidence for sufficiency, it does not matter which conclusions the court would have inferred from the evidence. *Jenks* at 273. Rather, because the reviewing court must view the evidence in the light most favorable to the prosecution it must accept the conclusions that the factfinder validly inferred from the evidence that tend to show the accused's guilt. *Cotton* at ¶ 42.

{¶ 39} Here, the evidence at trial indicates that Piercefield engaged in a loud argument with K.S., during which Piercefield caused bruising to K.S.'s cheeks, neck, and head, as well as a gash to her mouth. K.S. called 9-1-1 and took her son to UDF, where she was interviewed by Sergeant McAdams. During the interview, K.S. was a little worked up and under the stress of the underlying event. After conducting an investigation, Sergeant McAdams concluded that Piercefield caused the bruising and injuries to K.S. that day.

{¶ 40} Based on the above, we find there is sufficient evidence in the record to support Piercefield's conviction for domestic violence. That is, when viewing the evidence in a light most favorably to the prosecution, the trial court could infer from the nature of K.S.'s bruising to the head and neck area, Piercefield's loud demeanor during the couples' argument, and the fact that Piercefield caused K.S.'s injuries, that Piercefield acted knowingly when he physically harmed K.S. While this may not be the only conclusion that the trial court could have reached, it is a conclusion that could be validly inferred from the evidence and tends to show Piercefield's guilt. *Cotton* at ¶ 42. Accordingly, we find Piercefield's conviction is supported by sufficient evidence, and overrule his second and third assignments of error.

{¶ 41} In light of our resolution of Piercefield's second and third assignments of error, we must determine whether this case shall be remanded for a new trial or if Piercefield is discharged.

{¶ 42} The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." Similarly, Article I, Section 10 of the Ohio Constitution provides that "[n]o person shall be twice put in jeopardy for the same offense." Therefore, the Double Jeopardy Clause protects against a "second prosecution for the same offense after acquittal." *Girard v. Giordano*, 155 Ohio St.3d 470, 2018-Ohio-5024, ¶ 8. This protection applies to "prevent retrial after an appellate court determines that the evidence presented at trial was insufficient to convict." *Id.* at ¶ 10. The Double Jeopardy Clause prevents the state from having a "'second bite at the apple' and a chance to present evidence it failed to offer at the first trial." *Lovejoy*, 79 Ohio St.3d at 450.

{¶ 43} As noted above, the Ohio Supreme Court has held that the state "may rely upon the trial court's evidentiary rulings in deciding how to present its case." *Brewer*, 2009-

Ohio-593 at ¶ 19, citing *Lockhart*. Thus, in contrast to a reversal based on insufficient evidence, "when an appellate court's reversal is based on 'trial error'—for example, an erroneous admission of evidence—the Double Jeopardy Clause does not bar retrial." *Giordano* at ¶ 11, citing *Lockhart* at 40 and *Brewer* at ¶ 18.

**{¶ 44}** Our reversal in this case is limited to our resolution of Piercefield's first assignment of error, i.e., that the trial court erred in admitting the entirety of Sergeant McAdams' testimony. As a result, our reversal is not based on insufficient evidence, but mere trial error, and the Double Jeopardy Clause does not bar retrial.

**{¶ 45}** Based on the foregoing, Piercefield's second and third assignments of error are not well-taken and are overruled. We sustain Piercefield's first assignment of error, reverse the trial court's judgment, and remand this cause for a new trial.

**{¶ 46}** Judgment reversed and cause remanded.

S. POWELL, P.J., and M. POWELL, J., concur.